**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**STEPHEN EDWARDS**
**ADC #92127**                                                                    **PLAINTIFF**

**V.**                              **CASE NO. 1:12CV00044 JLH/BD**

**WENDY KELLEY, et al.**                                              **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.      Procedures for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge J. Leon Holmes.  Mr. Edwards–or any party–may file written

objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the

United States District Court Clerk within fourteen (14) days of this Recommendation.  A

copy will be furnished to the opposing party.

If no objections are filed, Judge Holmes can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.  Introduction

Plaintiff Stephen Edwards, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs.  As a result of the Defendants' conduct, Mr. Edwards claims, he had to have surgery on his foot and continues to experience constant finger pain.

Defendants Wendy Kelley and Ray Hobbs ("ADC Defendants") have filed a motion for summary judgment.[1]  (Docket entry #119)  Separate Defendants Bernard Williams, Michelle Bishop, John Irvin, Jodie Lafevers, David Ware, and Corizon Medical Services ("Medical Defendants") have also moved for summary judgment.  (#122)  Mr. Edwards has responded to both motions.  (#129 and #130)  For the reasons set out below, the motions for summary judgment (#119 and #122) should be GRANTED.

---

[1] Defendant David White, Warden of the ADC's North Central Unit, did not join the ADC Defendants's motion for summary judgment.  The Court, however, notified the parties of its intention to consider summary judgment for David White, as permitted by Federal Rule of Civil Procedure 56(f)(1).  (#134)  Defendant White responded in support of the Order.  (#137)  Mr. Edwards noted that, despite having the "entire Attorney General's Office to represent him," Defendant White failed to file a dispositive motion before the Court ordered deadline.  (#139)

### III.   <u>Undisputed Facts</u>

At the time Mr. Edwards entered the ADC in October of 2009, he had a normal physical examination.  (#123-2, pp. 2-7)  By March 6, 2010, Mr. Edwards began complaining of back and foot pain.  A foot examination was normal, but Dr. Nance recommended that Mr. Edwards see a specialist at the foot clinic for evaluation.  Dr. Roland Anderson, the regional medical director at the time, recommended that Mr. Edwards use an insole for support instead.  (#123-2, p. 8)

ADC officials transferred Mr. Edwards to the North Central Unit on March 12, 2010.  After Mr. Edwards complained of pain and an inability to walk, Dr. Irvin saw him on March 22, 2010.  Mr. Edwards's examination was normal.  (#123-2, pp. 9-11)  Mr. Edwards continued to complain of back pain and underwent an MRI on April 14, 2010.  The results showed no acute issues. (#123-2, p. 12)

Mr. Edwards saw Dr. Irvin again on May 26, 2010, for back and foot pain.  (#123-2, p. 13)  Dr. Irvin referred Mr. Edwards to the foot clinic.  This was Mr. Edwards's second referral to the foot clinic, from a second physician.  Dr. Anderson, however, again determined that a referral to the foot clinic was unnecessary and that well padded tennis shoes would be appropriate.  (#123-2, p. 13)

Mr. Edwards was seen for back and foot pain again on August 13, 2010.  (#123-2, p. 49)  He then saw Nurse Lafevers in chronic care on August 23 and September 10, 2010.  (#123-2, pp. 50-51)

3

On October 11, 2010, Mr. Edwards saw Dr. Irvin again for foot complaints, this time due to a knot on his foot.  Dr. Irvin diagnosed Mr. Edwards with planter fasciitis and prescribed double insoles.  (#123-2, p. 53)  Dr. Irvin saw Mr. Edwards again on November 17, 2010, and prescribed heel cups to go along with the well padded tennis shoes with double insoles.  (#123-2, p. 54)

On December 15, 2010, Mr. Edwards complained that the insoles, padded shoes, and heel cups were not relieving his pain.  Dr. Irvin noted a mass on Mr. Edwards's left foot and recommended an "ortho" evaluation.  (#123-2, p. 14, 55)  Dr. Anderson again disagreed and instead recommended that Mr. Edwards cut a hole in the insoles to relieve the pressure against the mass.  (#123-2, p. 15)  An x-ray showed minimal osteoarthritic change, a palpable mass, and Dr. Chad Calendine recommended an MRI.  (#123-2, p. 16)

Dr. Irvin saw Mr. Edwards again on January 3, 2011, and relayed the recommendation to cut a hole in the insoles.  (#123-2, p. 55)  Mr. Edwards received medication at medical visits on January 31, February 5, February 17, and March 9, 2011.  (#123-2, p. 56, 58-59)  He was scheduled for an appointment at the foot clinic on March 17, 2011, but he either refused the appointment, or ADC officials declined to take him.  (#123-2, p. 18)  A few weeks later, Mr. Edwards sought medical attention for overheating while exercising.  He had apparently walked 9.5 miles and done 260 push ups.  (#123-2, p. 60)

Mr. Edwards saw Nurse Lafevers for back and foot problems again on April 18 and May 17, 2011, and received medications.  (#123-2, p. 62, 64)  In July 2011, Mr. Edwards continued to have back and foot pain.  (#123-2, p. 65)  The medical records also reflect that Mr. Edwards had a contracted left little finger.  Mr. Edwards was seen for his finger issue on August 12, 2011.  (#123-2, p. 67)

On August 16, 2011, Mr. Edwards saw Dr. Bishop complaining of continued foot pain.  (#123-2, p. 19)  At that time, Dr. Bishop recommended an "ortho" consult for Mr. Edwards's foot deformity because cutting the insole had not provided relief.  (#123-2, p. 19)  Dr. Anderson again disagreed with the consult recommendation and again recommended padded tennis shoes.  (#123-2, p. 20)  (Apparently, Mr. Edwards no longer had padded shoes.)  On September 19, 2011, however, Dr. Bishop again recommended an orthopedic consult because the padded shoes with a hole in the insoles had not resolved the issue.  (#123-2, p. 21)  This time, Dr. Anderson approved the recommendation for a consultation.  (#123-2, p. 22)  An appointment was scheduled for October 4, 2011, but Mr. Edwards did not attend.  He refused treatment from Dr. Anderson.  (#123-2, p. 23)  Soon after, ADC officials transferred Mr. Edwards to the Ouachita River Unit.  Mr. Edwards continued to have back, foot, and finger pain.  On November 15, 2011, Dr. Ware recommended that Mr. Edwards undergo specialty referrals for these problems.  (#123-2, p. 25)

Mr. Edwards saw an orthopedist, Dr. Crowell, on January 18, 2012.  Dr. Crowell diagnosed plantar fasciitis with a mass, and recommended removal.  He also recommended a separate consultation for Mr. Edwards's finger problem.  (#123-2, pp. 26-27)  Dr. Ware then made multiple requests for a consultation with a hand surgeon and removal of the foot mass.  (#123-2, pp. 27, 29, 30)

On March 5, 2012, Mr. Edwards had surgery to remove the mass on his foot. (#123-2, pp. 31-32)  He received follow-up treatment for his foot throughout March, April, May, and June, 2012.  (#123-2, pp. 76-90)  After a hand evaluation on May 14, 2012, Mr. Edwards had hand surgery on June 28, 2012.  (#123-2, pp. 92-93; #123-3)

Dr. Robert A. Floss, former Regional Medical Director for Corizon, reviewed the medical records in this case.  (#123-4)  In Dr. Floss's opinion, the clinical staff defendants, Dr. Bishop, Dr. Irvin, Dr. Ware, and Nurse Lafevers, all provided medically appropriate and adequate treatment for Mr. Edwards's foot and finger issues.  (#123-4)

## IV.    Discussion

### A.    Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of

material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

If the moving party meets this burden, the nonmoving party must respond by coming

forward with specific facts establishing a genuine dispute for trial.  *Torgerson v. City of*

*Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If the nonmoving party does

not come forward with enough evidence to establish a necessary element of a claim, the

moving party is entitled to judgment as a matter of law on that claim.  *Celotex Corp.,* 447

U.S. at 322–23, 106 S.Ct. at 2552.

### B.      Sovereign Immunity

Mr. Edwards's claims for money damages against the Defendants in their official

capacities are barred by sovereign immunity.  It is settled law that a civil litigant cannot

recover money damages from state actors sued in their official capacities.  *Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989).  Thus,

official-capacity claims against the Defendants for money damages should be dismissed

based on sovereign immunity.

### C.      Supervisory Liability

To succeed on a medical deliberate-indifference claim, a prisoner-plaintiff must

sue individuals directly responsible for the inmate's medical care.  *Kudlow v. Nix*, 28 F.3d

855, 859 (8th Cir. 1994).  Prison officials who were not involved in treatment decisions

made by the medical unit's staff, and those who lacked medical expertise, cannot be held

liable for the medical staff's treatment decisions.  *Id*.

7

In this case, the record shows that Ray Hobbs, Wendy Kelley, David White, Bernard Williams, and Corizon Medical Services had no direct involvement in Mr. Edwards's medical care.  Mr. Williams, the Health Services Administrator, came closest to direct involvement through his review of medical grievances.  It was Dr. Anderson, however, not Mr. Williams, who had the ability to review medical decisions and recommend alternate treatments.  There is also no evidence that Mr. Williams had medical expertise or made any medical decisions.  Although Defendant Williams responded to one of Mr. Edwards's grievances, participation in the grievance process is insufficient to establish liability under § 1983.  See *Day v. Correctional Medical Services*, 281 Fed. Appx. 624, 626, 2008 WL 2357869, **2. (8th Cir. 2008) (unpublished, per curiam decision); see also  *Rowe v. Norris*, 198 Fed. Appx. 579, *1 (8th Cir. 2006) (unpublished) (per curiam).

Mr. Edwards argues that Defendant Kelley was aware of intentional delays based on her signature on the grievances.  (#130, p. 4)  He claims that the ADC defendants were negligent, exercised "corrective inaction," and tacitly authorized "violative practices." (#130, p. 6)  As noted, involvement in the grievance process is insufficient to sustain claim under § 1983.  In addition, the ADC Defendants' general responsibility for supervising the operations of a prison is not the kind of personal involvement required to support liability.  *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997).

Mr. Edwards also notes that the ADC defendants were involved in designing the ADC procedures for handling medical grievances.  He alleges that the procedure caused long delays in receiving medical care.  (#130, pp. 6-7)  This allegation is not borne out by the record.  Mr. Edwards received medical attention for his ailments on a consistent and regular basis.  (#123-2)

Based on the undisputed evidence, Ray Hobbs, Wendy Kelley, David White, Bernard Williams, and Corizon Medical Services had no direct involvement in Mr. Edwards's care.  Their supervisory and administrative responsibilities cannot support the claims against them.  Accordingly, they are entitled to summary judgment.

### D.   Medical Deliberate Indifference

An actionable medical deliberate indifference claim requires more than a difference of opinion between the inmate and the doctor.  *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002).  Even medical malpractice does not rise to the level of a constitutional violation.  *Id.*  To prevail, Mr. Edwards must show that the Defendants actually knew of, but deliberately disregarded, his serious medical needs.  *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)

There was obviously a difference of opinion in the proper course of treatment in this case.  It appears that Dr. Irvin, Dr. Bishop, and Dr. Ware all recommended consultations that Dr. Anderson denied, at least initially.  In the absence of consultations, the conservative treatment included multiple insoles, well padded tennis shoes, and heel

cups.  Mr. Edwards at one point noted that the well padded tennis shoes had helped. (#123-5, p. 5)

According to Dr. Floss, conservative treatment is appropriate in the early stages of most non-emergency medical conditions.  (#123-4)  The medical records show that, while painful, Mr. Edwards's condition was not an emergency condition.  The record also shows that Mr. Edwards consistently had pain medication to reduce the impact of his foot and finger conditions.  He was still able to perform his field utility job during part of this time.  (#123-5, p. 14)  Mr. Edwards was also still able to exercise.  (#123-2, p. 60)

Dr. Anderson's actions in overriding the multiple recommendations for consultations raises some questions.  Dr. Anderson, however, is not a defendant in this case.[2]  The actions of the Medical Defendants who were involved in Mr. Edwards's treatment cannot support a claim for deliberate indifference to serious medical needs. Instead, the record shows that these defendants provided conservative care, medications, and multiple recommendations for consultations.  (#123-2)

Mr. Edwards argues that he suffered pain as a result of intentional delays in receiving treatment for his foot and finger conditions.  (#130, pp. 2-4)  A prisoner who alleges that a delay in treatment caused his harm must present verifying medical evidence that the prison officials "ignored an acute or escalating situation or that [these] delays

---

[2] On January 14, 2013, Dr. Anderson was dismissed from the lawsuit for lack of service.  (#55)

adversely affected his prognosis." See *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir.1995) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995), abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304 (1995), as recognized in *Reece*, 60 F.3d at 492 (internal quotation marks omitted)).  The medical records show that none of the medical defendants ignored Mr. Edwards's conditions.  Further, the records do not evidence any adverse effect from the pursuit of conservative treatment before eventual surgery.

Mr. Edwards saw an orthopedist, Dr. Crowell, on January 18, 2012.  Dr. Crowell diagnosed plantar fasciitis with a mass, and recommended removal.  He also recommended a separate consultation for Mr. Edwards's finger problem.  (#123-2, pp. 26-27)  Dr. Ware then made multiple requests for a hand-surgery consultant and foot-mass removal.  (#123-2, pp. 27, 29, 30)

Mr. Edwards did eventually have surgery to remove the mass in his foot.  (#123-2, pp. 31-32)  And he received followup treatment for his foot throughout March, April, May, and June, 2012.  (#123-2, pp. 76-90)  After a hand evaluation on May 14, 2012, he had hand surgery on June 28, 2012.  (#123-2, pp. 92-93; #123-3)

The actions of the medical defendants were not "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  *Jackson*, 756 F.3d at 1066 )(citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir.1997)).  Accordingly, Michelle Bishop, John Irvin, Jodie Lafevers, and David Ware are entitled to summary judgement on this claim.

11

**E.      Exhaustion and Qualified Immunity**

The Medical Defendants argue for summary judgment based, in part, on Mr. Edwards's failure to exhaust his administrative remedies.  (#122)  The ADC Defendants argue for summary judgment based, in part, on qualified immunity.  (#119)  Because this Court recommends dismissal on the merits, it is unnecessary to address these arguments. That said, the right to appropriate medical care was clearly established years ago.

**V.      Conclusion**

The Court recommends that the Defendants' motions for summary judgment (#119 and #122) be GRANTED.  All of Mr. Edwards's claims against Defendants Ray Hobbs, Wendy Kelley, David White, Bernard Williams, Michelle Bishop, John Irvin, Jodie Lafevers, David Ware, and Corizon Medical Services should be DISMISSED, with prejudice.

DATED this 29th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE